A01A1240. THE STATE v. JONES.
(556 SE2d 495)

POPE, Presiding Judge.

Defendant Keith Jones was charged with possession of cocaine with intent to distribute and distributing controlled substances near

a park or housing project. The trial court granted Jones' motion to suppress evidence, and the state appeals pursuant to OCGA § 5-7-1 (a) (4).

The applicable standard of review of an order on a motion to suppress was recently reiterated as follows:

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to the questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Footnote omitted.) *Stanford v. State*, 251 Ga. App. 87, 88-89 (1) (553 SE2d 622) (2001).

Viewed in this light, the transcript of the motion to suppress hearing shows that at 10:00 p.m. on November 15, 1998, a Gwinnett County police officer on patrol in an area known for its drug dealing observed a car backed into the driveway of a residence belonging to a known drug offender who was incarcerated. The officer testified that he was "suspicious of the fact there was a car parked there when ordinarily nobody was there," especially as it was backed into the driveway at night. He also testified that he had never seen that car there before. The officer testified that he parked up the street to observe traffic and a few minutes later saw the same car leave the mobile home park and drive past him. He noticed that the paper "drive-out" tag on the car appeared to have been "on there for a considerable amount of time" — i.e., in excess of the 30 days allowed by OCGA § 40-2-20 (c) as then in effect — and pulled the car over and informed the driver, appellee Jones, that he had "stopped him for the drive-out tag." Jones produced a bill of sale showing a date less than, though nearly, 30 days in the past, and the officer went back to his cruiser to verify whether Jones' license was valid and to ascertain whether there were any warrants outstanding against him. After verifying Jones' license and discovering that there were no warrants for Jones, the officer returned to Jones' car and, while still holding Jones' license and other papers, began to question Jones about what

he was doing in the area. Jones told the officer he was at the home of his cousin, who was in jail. The officer then requested permission to search Jones' car for drugs based on Jones being "in a known drug area [parked] in a known drug dealer's front yard," and Jones consented. The officer returned Jones' license, insurance papers, and bill of sale and searched his car. The officer discovered a bag of what appeared to be crack cocaine when he pulled down the front seat armrest.

1. The trial court found that the officer's belief that the tag was expired justified the initial stop. But the trial court also found that "at the point the officer concluded that [Jones] was not in violation of any traffic offense, *absent a reasonable suspicion of some other criminal activity*, he had a duty to return [Jones'] license and insurance and terminate the stop, allowing [Jones] to go on his way." (Emphasis in original.) And as to whether there was a reasonable suspicion of some other criminal activity, the court had earlier concluded in its order that "there are simply no facts to justify a reasonable suspicion of criminal activity[;] all the officer did have or could have had based on the facts in evidence was a generalized hunch." Thus, the trial court granted Jones' motion to suppress the evidence of contraband.

The trial court's statement of the applicable law is in accord with our twelve-judge decision issued approximately two months later in *State v. Gibbons*, 248 Ga. App. 859 (547 SE2d 679) (2001). In that case, the officer stopped the defendants after he observed they were not wearing seat belts and then obtained the driver's permission to search his person[1] during a continued detention and questioning which were unrelated to the initial reason for the stop. Id. at 860-863. We agreed with the trial court that this continued detention was unauthorized, noting that "the trooper admitted that he held [the] driver's license while asking questions that were not related to the seat belt violation," id. at 864, and that "[t]here is no evidence that the trooper asked these questions while performing a license or vehicle registration check." Id. at 864, n. 1. Thus, we concluded that the driver's consent to search his person was the product of an illegal detention and thus invalid and affirmed the suppression of the evidence as a result of that search. Id.

Here, as in *Gibbons*, the officer continued to detain Jones and question him about matters unrelated to the reason for the initial stop after he had completed the routine license and vehicle registration check. Additionally, as in *Gibbons*, the officer did not return Jones' driver's license or other papers during the continued detention

---

[1] The search of the driver revealed evidence of contraband, and the officer placed both the driver and the passenger under arrest. The ensuing inventory search of the car uncovered a package of cocaine in the trunk. *Gibbons*, 248 Ga. App. at 863.

and questioning. Consequently, Jones was not free to leave during this continued detention and was not free to leave at the time the officer requested his consent to search. "It is this continued detention that makes the questioning and request to search without reasonable suspicion of criminal activity impermissible." *Gibbons*, 248 Ga. App. at 864 (Pope, P. J., concurring specially). Cf. *Henderson v. State*, 250 Ga. App. 278 (551 SE2d 400) (2001) (in which the drug questioning occurred while the initially valid stop was still in progress).

> To reiterate, "[s]o long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." [Cit.] Here, . . . the trial court found that the defendant was detained without justification when the officer began to question the defendant about drugs and request consent to search. Therefore, the continued encounter was not consensual.

*Gibbons*, 248 Ga. App. at 866 (Pope, P. J., concurring specially).

2. Further, we agree with the trial court that the continued detention was not authorized by a reasonable suspicion of other criminal activity. Here, the officer testified that his suspicions were aroused because Jones' car was unfamiliar and it was backed into a driveway of a residence belonging to a person the officer knew was in jail on drug charges. But the officer never explained why he thought criminal activity would be emanating from the residence if the drug dealer who lived there was incarcerated, and the officer pointed to no other behavior during his observation of Jones to incite suspicion. Cf. *Bell v. State*, 248 Ga. App. 254, 257 (546 SE2d 34) (2001) (defendant's behavior after the stop raised a reasonable suspicion of criminal conduct). We find this situation similar to that presented in the cases of *Smith v. State*, 245 Ga. App. 613, 614 (538 SE2d 517) (2000) (officer observed car which had been parked differently than other cars in apartment complex make a " 'quick exit of the complex' "); *State v. Winnie*, 242 Ga. App. 228 (529 SE2d 215) (2000) (officer observed truck turn into and then start to exit the parking lot of a closed business at 4:00 a.m.); *In the Interest of M. J. H.*, 239 Ga. App. 894 (522 SE2d 491) (1999); and *Attaway v. State*, 236 Ga. App. 307 (511 SE2d 635) (1999) (police received a call that a car was circling around a subdivision several times late at night), where we also rejected the contention that there was a particularized and objective basis for suspecting the defendants were engaged in criminal activity. Thus, we agree with the trial court that the officer lacked a reasonable and articulable suspicion to detain Jones and affirm the grant of Jones' motion to suppress.

*Judgment affirmed. Blackburn, C. J., and Mikell, J., concur.*

DECIDED NOVEMBER 13, 2001.

*Daniel J. Porter, District Attorney, Donald P. Geary, Assistant District Attorney*, for appellant.

*Stepp & Randazzo, Joseph L. Randazzo, Jr.*, for appellee.